49 CCPA

## Application of Robert B. GORDON and Walter J. Hurford.

### Patent Appeal No. 6810.

United States Court of Customs and Patent Appeals.

May 18, 1962.

Frederick Shapoe, East Pittsburgh, Pa., for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1, 2, 4, 5, 6, 9 and 10 in the application of Robert B. Gordon and Walter J. Hurford, Ser. No. 367,524 filed July 13, 1953, entitled "Method of Producing Sound and Homogeneous Ingots." The sole issue is patentability over the following references:

| Rohn | 1,555,313 | Sept. 29, 1925 |
|------|-----------|----------------|
| Herres et al. | 2,541,764 | Feb. 13, 1951 |
| Herres | 2,640,860 | June 2, 1953 |

Appellants' specification discusses the background of their invention as follows:

"Considerable difficulties have been encountered in producing sound, clean and homogeneous ingots from the refractory and easily oxidizable metals and alloys thereof, such, for example, as titanium, zirconium, uranium and vanadium, and various alloys thereof. These metals in particular react readily with oxygen and nitrogen to form compounds which are extremely difficult to decompose in order to remove the anion component thereof. In the process of preparing ingots from these elements and their alloys by the most meticulous procedures known to the art, there are inevitably produced ingots whose surfaces are thickly contaminated with oxides and other impurities, such, for example, as the salts that may have been employed in producing the metals. The interior of the ingots is usually porous and contains much entrapped gases. The alloys of these elements show considerable variations in composition from point to point along the ingots. At the present time, for subsequent processing, the accepted procedures involve the removal of a large portion of the cast ingots, particularly at the surfaces, which portions are discarded. The core of such ingots is often rolled or worked into bars or rods in order to homogenize the composition and to reduce the porosity. Such bars or rods are then cut or otherwise reduced to small particles and remelted in an arc melting furnace into a useable ingot of reasonably sound structure. However, these ingots, though more homogeneous that the first ingots, are contaminated from gases picked up during fabrication for remelting and the products made therefrom vary considerably in their properties."

As to their own invention, appellants state:

"The object of this invention is to provide a process whereby sound, clean ingots of a high degree of homogeneity are produced by a simple process involving two successive arc melting operations with substantially no waste of the metal being made into the final ingot.

\* \* \* \* \* \*

"We have discovered a simple process for producing sound, clean and highly homogeneous ingots from refractory and easily oxidizable metals, which are usually in the form of powder or sponge as a result of reduction from the oxide or other compound thereof, by arc melting the metals as a consumable electrode in an inert atmosphere or vacuum to produce an initial ingot, and then employing said initial ingot as a consumable electrode in a second arc melting operation also in an inert atmosphere or under vacuum whereupon the second arc melting produces a final ingot having the desired properties. \* \* \* All intermediate processing with attendant waste and

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge

O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

scrap as required heretofore, is completely eliminated."

Appellants disclose that their consumable electrode is prepared from sponge or other crude form of the refractory metal to be melted. The sponge metal is "pressed into compacts at pressures of the order of 40,000 psi * * *." Appellants state that the compacts produced from such sponge metals "usually contain a substantial proportion of salts, such as magnesium chloride, magnesium, and metal oxides, such as zirconium oxide, present along with small amounts of entrapped nitrogen and other gases." These compacts are then "assembled together by tack welding them at several points while in an inert atmosphere, such, for example, as argon. By such welding procedures, a composite electrode member may be prepared which may be 4 feet long by 4 inches by 4 inches in cross-section."

Claim 1 is exemplary and reads as follows:

"1. In the process of preparing sound and highly homogeneous ingots from easily oxidized refractory. metals, the steps comprising preparing an electrode of the refractory metal, placing an end of the prepared electrode within a cooled mold, passing an electrical current between the electrode and the mold whereby the electrode is progressively melted from said end and is deposited in the bottom of the mold, the molten metal deposited in the mold progressively solidifying to build up an ingot, the melting of the electrode being carried out in the absence of a reactive gas the resulting solidified ingot characterized by a relatively poor, contaminated surface and inhomogeneity, thereafter employing the entire resulting ingot as a second electrode and remelting only such ingot into a second ingot under similar conditions to the preparation of the first ingot whereupon the second ingot is characterized by a clean surface relatively free from contaminations and the metal in the ingot is highly homogeneous."

The Rohn reference discloses a process of "degasifying metals," by repeatedly melting them in a "furnace," specifically an induction furnace, under critical temperatures and reduced pressures, which are *different* for each melt. Referring to the effect that such remelting has on the chemical composition of the metals treated, Rohn states, "before and after the melting the chemical composition *differed but immaterially*." (Emphasis added.) In particular we note that Rohn nowhere discloses that it is an aim of his process to remove oxide and salt impurities from his melted metal. Nor does he suggest arc melting.

The Herres et al. disclosure pertains to a "method and apparatus for melting refractory metal, and more particularly to a method and apparatus for reducing powdered metals to ingot or casting form in which the melting and casting are performed concurrently." The Herres et al. ingots are formed in the following manner: powdered metal is fed in a continuous stream to a cylindrical chamber; in this chamber the metal is melted by an arc between one end of a consumable cylindrical electrode and the powdered metal. The Herres et al. electrode material is replenished by introducing powdered metal at the other end of the electrode and arc melting this metal by means of an arc between a non-consumable electrode and the powdered metal. The Herres et al. consumable electrode, accordingly, is consumed at one end and simultaneously built up at the other. It can be seen, therefore, that the Herres et al. ingots are formed in part by metal arc melted twice and in part by metal arc melted only once. As in appellants' invention, the Herres et al. arc welding steps preferably "take place in an atmosphere filled with inert gas such, for example, as argon or helium, or in a vacuum * * *." Herres et al. also disclose that melting of refractory metals in crucible-type furnaces is extremely difficult and generally unsatisfactory because of the tendency of the

metals to react with the ceramic and contaminate the metal. By various means, including water cooling their ingot-containing chamber walls, Herres et al. obviate this problem. We note, however, that the Herres et al. disclosure does not allege that any mechanical, physical, or chemical property of the original powdered metal is improved by the arc melting procedure disclosed. Particularly, no disclosure exists in Herres et al. indicating that oxide and salt impurities might be removed from a metal by arc melting.

Herres discloses a process for converting, by arc melting, a consumable electrode of a refractory metal such as titanium, of a given cross-section, into an ingot of substantially larger cross-section. The consumable Herres electrode "is made by pre-forming titanium powder or titanium sponge metal up to one inch in particle size at a pressure of approximately 15 tons per sq. in. to form sticks of convenient length and cross section." A mechanism is provided for successively flash welding these "sticks" and feeding them toward the furnace in which the electrode metal is being melted. The Herres ingots may be made either by continuously arc melting the electrode material alone, or by introducing into the ingot-forming, metal-melting chamber additional "alloying metals or elements" thereby forming an ingot composed in part of electrode material and in part of these additional metals or elements. As in the Herres et al. disclosure, Herres discloses that:

"An ambient atmosphere is maintained about the titanium-base sticks, as well as within the furnace and about a delivery end thereof that is non-contaminating of the titanium. Gases which are inert to titanium, such as argon, helium and neon, or a vacuum may be employed for this purpose."

As is the case with Rohn and Herres et al., Herres does not disclose that oxide and salt impurities might be removed from a metal by arc melting.

The appealed claims stand rejected as unpatentable over (1) Rohn in view of Herres et al. and Herres, or (2) Herres et al. in view of Rohn and Herres.

As to the first rejection, the examiner stated:

"It is considered non-inventive to modify the double melting process of Rohn by a double arc melting technique of the type shown by Herres et al (1). In Rohn the reasons for and results obtained by the double melting are disclosed to the extent that only ordinary skill would be necessary to modify the process in accordance with Herres et al (1). Use of consumable electrodes in melting processes is old and well known, and it is also well known that consumable product metal briquette-type electrodes may be used to produce molten refractory metal as shown by Herres (2). Utilization of the well known techniques of Herres et al (1) and Herres (2) would produce nothing unexpected."

In affirming this rejection of the examiner, the board stated in part that "we regard the teaching in Rohn as constituting the essential principles upon which the present process is based."

We cannot sustain this rejection as we find both the examiner and the board fundamentally in error as to what are "the reasons for and results obtained by" and the "essential principles" of appellants' process.

The main result obtained by appellants' invention is, as we see it, that an ingot of refractory metal may be produced thereby with "substantially no waste of the metal being made into the final ingot." The "attendant waste and scrap as required heretofore, is completely eliminated" by appellants' process. This point is repeatedly made by appellants in their specification and in their objection to the Patent Office's combination of references. Commenting on the pertinence of the Herres et al. reference, for example, appellants, in their brief before this court, state that "as long as fresh metal powder from tank 41 flows into the second arc melting region in Herres et al (1) *it introduces impurities,*

*non-homogeneity and leads to a defective ingot structure."* (Emphasis added.)

We note that the board itself recognized the deficiency of the prior art, particularly with reference to Rohn, when it said:

"Since the Rohn patent is limited to the treatment of metals which are not refractory in their nature, the problems referred to by appellants would not exist."

Accordingly, in view of our understanding of what appellants' invention is, we find the reasoning behind this rejection untenable.

While the board did not specifically refer to the examiner's second rejection, it did affirm the examiner generally and hence affirmed this rejection as well. Appellants have assigned as error the board's refusal to reverse this rejection, thereby bringing it before us for consideration.

The examiner succinctly stated his second rejection as follows:

"Furthermore, Herres et al (1) could be modified without invention in accordance with Rohn by omitting the powder metal from hopper 41 [the second source of powdered metal in the Herres et al. disclosure] and utilizing electrode 31 as the sole source of metal for the final ingot."

We are unable to find in Rohn any suggestion or reason for so modifying Herres et al., as assumed by the examiner, even if the results obtained by appellants in their invention were being sought after. It is not altogether clear to us, moreover, how one would modify Herres et al. "in accordance with Rohn." Rohn melts over differing periods with varying pressure and temperature conditions in an induction furnace for the sole purpose of degasifying thoroughly. We do not find anything in Rohn which would suggest any modification of the Herres et al. structure, or its operation. We believe these references would not suggest to one skilled in the art that *double arc melting* of a refractory metal would result in the allegedly unexpected removal of oxides and other contaminants from the metal.

For the above reasons the decision of the board is reversed.

Reversed.

MARTIN, Judge, sat but did not participate because of illness.